726 P.2d 1386

**Ernesto Quinones GAMBOA, Jr., by Personal Representative Ernesto GAMBOA, Sr., Plaintiff-Appellee,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant-Appellant.**

No. 15998.

Supreme Court of New Mexico.

Oct. 30, 1986.

Farlow, Simone, Roberts & Weiss, Norman F. Weiss, LeRoi Farlow, Stephen M. Simone, Albuquerque, for defendant-appellant.

John E. Keithly, Anthony, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

Plaintiff Ernesto Gamboa, Sr., representative of the estate of Ernesto Quinones Gamboa, Jr., brought a declaratory judgment action in Dona Ana District Court, seeking interpretation and construction of an insurance policy defendant Allstate Insurance Company (Allstate) issued to Wilfred Trujillo. More specifically, plaintiff seeks to determine whether decedent Gamboa is entitled to protection as an "insured" under the uninsured motorist coverage provision of the policy. Both parties filed motions for summary judgment. After a hearing, the trial court entered an order on June 19, 1985, for summary judgment in plaintiff's favor. Allstate appeals and we now reverse the trial court.

**FACTS:**

On April 28, 1984, the decedent, Ernesto Gamboa, was a passenger in his father's 1978 Chevrolet automobile. The driver, Andrew Trujillo, was also killed when their vehicle was struck "head on" by another vehicle. The other vehicle involved was a 1979 Ford operated by Edward Segovia, an uninsured motorist. At the time of the accident, American Fidelity Insurance Company (American) insured the Chevrolet, providing uninsured motorist coverage in the amount of $15,000 per person limits. The estates of both decedents, Trujillo and Gamboa, filed claims against American and recovered payments under the uninsured motorist coverage provision. In addition, Andrew Trujillo's father, Wilfred Trujillo, also had a policy in effect at the time of the accident issued by Allstate covering a 1978 Ford owned by him. This automobile was not involved in the accident. The uninsured motorist coverage provided under this policy was limited to $25,000 per person.

The plaintiff claims that Allstate is obligated under its policy to Trujillo on the Ford to pay, within policy limits, any judgment rendered against Segovia in favor of plaintiff.

Allstate denies liability, alleging that plaintiff's decedent was not an "insured" within the uninsured motorist coverage of its policy. The trial court, granting summary judgment in favor of plaintiff, found that Gamboa was an "insured" under Allstate's policy and should be entitled to benefits under the uninsured motorist coverage provision.

The sole issue on appeal is whether plaintiff's decedent, an insured under American's policy, is also an "insured" under Allstate's uninsured motorist coverage and thus allowed to "stack" both coverages.

Stacking refers to an insured's attempted recovery of damages by aggregating the coverage under more than one policy or under one policy covering more than one automobile. *Lopez v. Foundation Reserve Insurance Co.*, 98 N.M. 166, 646 P.2d 1230 (1982). In the instant case, plaintiff is attempting to interpolicy stack the uninsured motorist coverages under both American's and Allstate's policies. Allstate, relying on the underlying rationale of *Lopez*, argues that plaintiff should not be allowed to "stack" the uninsured motorist coverage under its policy because decedent Gamboa is limited to the coverage on the vehicle occupied, the 1978 Chevrolet insured by American. In *Lopez*, this Court held that an insured who had been paying multiple premiums under one policy was entitled to intrapolicy stacking of uninsured motorist

coverage purchased for two automobiles. More importantly, this Court also held that an occupant involved in an accident who is entitled to uninsured motorist coverage solely because of his status as a passenger may not "stack" uninsured motorist coverage. In so holding, this Court recognized the difference in status between a first class insured and a second class insured. First class insureds are covered by policies no matter where they are or in what circumstances they may be; coverage is not limited to a particular vehicle. *Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 533 P.2d 100 (1975). On the other hand, second class insureds are covered only because they occupy an insured vehicle. Several other jurisdictions have recognized the difference between the two classes of insureds. *See Sturdy v. Allied Mutual Insurance Co.*, 203 Kan. 783, 457 P.2d 34 (1969); *Holloway v. Nationwide Mutual Insurance Co.*, 376 So.2d 690 (Ala.1979); *Florida Insurance Guaranty Association v. Johnson*, 392 So.2d 1348 (Fla.App.1980); *Thompson v. Grange Insurance Association*, 34 Wash.App. 151, 660 P.2d 307 (1983); *Babcock v. Adkins*, 695 P.2d 1340 (Okl.1984).

The prevailing rationale in permitting first class insureds to "stack" coverages under multi-vehicle policies is because they have paid separate premiums and therefore reasonably expect the fulfillment of the terms of those policies purchased. *E.g., Lambert v. Liberty Mutual Insurance Co.*, 331 So.2d 260, 263 (Ala.1976); *Babcock v. Adkins*, 695 P.2d at 1342. This rationale is not applicable to an insured by virtue of vehicle occupancy. The additional uninsured motorist coverage premium paid covering insureds of the second class gives them the coverage they otherwise would not have had. *Thompson v. Grange Insurance Association*, 34 Wash.App. at 159, 660 P.2d at 312. "Neither the passenger nor the purchaser of the policy would have any legitimate contractual expectation that one insured solely by reason of his presence in a vehicle would be entitled to a recovery under other policies belonging to the named insured covering vehicles which were not involved in the accident." *Babcock*, 695 P.2d at 1343. As the trial court noted here, "[t]he troublesome aspect of this case is that plaintiff did not contract with defendant for coverage, did not pay a premium and claims coverage from the fortuitous circumstance that plaintiff's decedent was occupying a vehicle operated by defendant's insured."

Plaintiff argues that *Lopez*, involving intrapolicy stacking, is distinguishable on its facts and not controlling because the Court did not determine whether the passenger there was in fact defined as an "insured" under that policy. Plaintiff maintains that a passenger is not limited to the coverage on the vehicle occupied if another policy under which additional recovery is sought also defines the passenger as an "insured." The plaintiff relies on *Merritt v. Farmers Insurance Co.*, 7 Kan.App.2d 705, 647 P.2d 1355 (1982), and *Sloan v. Dairyland Insurance Co.*, 86 N.M. 65, 519 P.2d 301 (1974). In both cases, passenger-plaintiffs were allowed to "stack" uninsured motorist coverages under policies covering non-involved vehicles because plaintiffs were defined as "insureds" under those policies. Therefore, the "stacking" issue arises only when it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an insured under those policies. *Seaton v. Kelly*, 339 So.2d 731, 733 (La.1976). Accordingly, Allstate contends that decedent Gamboa is not an "insured" under its policy language and therefore not entitled to coverage. We agree.

Whether plaintiff's decedent was covered by the uninsured motorist clause of Allstate's policy when riding in the 1978 Chevrolet is a question of law for the courts to decide. *See Sears v. Wilson*, 10 Kan. App.2d 494, 704 P.2d 389 (1985). "In deciding this question, this court must look to the provisions of the policy; if the terms of the policy are not ambiguous, the language used must be given its natural and ordinary meaning." Id. at 495, 704 P.2d at 390 (citations omitted); *Safeco Insurance Co.*

*of America, Inc. v. McKenna*, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977).

The 1978 Ford policy provides in pertinent part:

## SECTION II PROTECTION AGAINST BODILY INJURY AND PROPERTY DAMAGE BY UNINSURED MOTOR VEHICLES

'Insured' means:

(a) the named insured as stated in the policy and, while residents of the same household, the spouse of any such named insured and relatives of either;

(b) any other person while occupying an insured motor vehicle; and

(c) any person with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (a) or (b) above; * * *.

'Insured Motor Vehicle' means a motor vehicle:

(a) described in the declarations as an insured motor vehicle to which the bodily injury and property damage liability coverages of the policy apply;

(b) while temporarily used as a substitute for an insured motor vehicle as described in subparagraph (a) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) while being operated by the named insured or by his spouse if a resident of the same household; * * *.

The trial court, without considering the above definition of insured motor vehicle, found this provision of the policy ambiguous, and more specifically subparagraph (c) which plaintiff relies on under the definition "insured." The trial court resorted to "SECTION IV MEDICAL EXPENSE, DEATH INDEMNITY AND DISABILITY INCOME PROTECTION" of the policy to help in its construction of the term "insured." That portion of the policy provides in pertinent part:

The following persons are insured under this Part

\* \* \* \* \* \*

2. Any other person who sustains bodily injury while occupying:

\* \* \* \* \* \*

(b) a non-owned automobile if the *injury results from:*

\* \* \* \* \* \*

(2) its operation ... by a relative if such automobile is a private passenger automobile or trailer, provided the use thereof is with the permission ... of the owner and is within the scope of such permission. [Emphasis added].

The court found under this provision that "*any* injured person is covered if occupying a non-owned automobile if it was being operated by a relative of the named insured with the permission of the owner." The court concluded that the named insured should have expected that any person occupying a non-owned automobile operated by a relative residing in his household would be protected under the uninsured motorist coverage provision of the policy. This provision relied upon by the trial court in its construction of the term "insured" does not relate to the uninsured motorist coverage. Recovery under the uninsured motorist protection should not be likened to medical payments protection. *Remsen v. Midway Liquors, Inc.*, 30 Ill.App.2d 132, 174 N.E.2d 7 (1961). Furthermore, the issue here is not whether the plaintiff is entitled to the benefit of the medical expense coverage of Allstate's policy, but whether he is entitled as an "insured" to the benefits of the uninsured motorist coverage. The courts should not resort to a strained construction of the policy for purposes of creating an ambiguity when no ambiguity in fact exists. *Atlas Assurance Co. Ltd. v. General Builders, Inc.*, 93 N.M. 398, 600 P.2d 850 (Ct.App.1979). An insurance policy can be construed only when the language of the policy is equivocal, indefinite, or ambiguous. 44 C.J.S. *Insurance* § 290 at 1139 (1945). If the language is clear or unequivocal, construction is unnecessary. *Ivy Nel-*

*son Grain Co. v. Commercial Union Insurance Co.,* 80 N.M. 224, 453 P.2d 587 (1969).

Considering the contract as a whole, we find the policy language unambiguous. Other courts interpreting the same or similar language in Section II above, defining "insured," have found no ambiguity. *See Seaton v. Kelly,* 339 So.2d at 733; *Schmidt v. Estate of Choron,* 376 So.2d 579, 580 (La.App.1979); *Continental Casualty Co. v. Darch,* 27 Wash.App. 726, 728, 620 P.2d 1005, 1006 (1980).

Allstate's uninsured motorist coverage clearly refers to three classes of insureds: the first class insured includes the named insured, his spouse, and relatives in the same household; the second class insured is any other person while occupying an insured motor vehicle; and the third class encompasses those persons entitled to recover because of bodily injury sustained by an insured as defined under the first and second instance. Plaintiff does not rely on subparagraphs (a) or (b) for his position, but argues that he is any person, a third class of insured, entitled to recover under subparagraph (c). We disagree.

 The language under subparagraph (c), "damages he is entitled to recover," refers to a right arising under the applicable law of torts. *Thompson,* 34 Wash.App. at 160, 660 P.2d at 313; *Pearthree v. Hartford Accident & Indemnity Co.,* 373 So.2d 267, 271 (Miss.1979). Perhaps plaintiff would be entitled to recover under subparagraph (c) if decedent Gamboa was an "insured" under subparagraphs (a) or (b). Plaintiff's right to recovery is contingent upon "bodily injury … sustained by an insured under (a) or (b)." Therefore, we must examine subparagraphs (a) and (b) to determine whether decedent Gamboa is an "insured." Plaintiff's decedent is not a first class insured, being neither a named insured nor a relative of Trujillo residing in Trujillo's household. Furthermore, plaintiff's decedent is not a second class insured because he did not occupy an insured motor vehicle to which the Ford policy applied. Plaintiff's decedent occupied the 1978 Chevrolet, not the vehicle described in the declarations of the policy, nor was the Chevrolet a temporary substitute for the insured motor vehicle, nor was it being operated by the named insured or spouse. Thus, plaintiff is not entitled to recover under subparagraphs (a), (b), or (c). The policy does not define decedent Gamboa as an "insured."

Plaintiff would have us find that Allstate's policy language is similar to the defendant's policy in *Merritt* in which a passenger was permitted to recover under the driver's uninsured motorist coverage, although the driver's automobile was not the vehicle occupied. In *Merritt,* the defendant's policy defined "insured motor vehicle" as a non-owned automobile with permission of the owner and then defined "insured" as including any other person while occupying an "insured motor vehicle." In that case defendant's policy defined plaintiff Merritt as an insured in clear and unambiguous language. Conversely, in the present case, the plaintiff's decedent was not occupying the insured motor vehicle described in the policy for which a specific premium charge was paid, and by the clear terms of the policy, no coverage was afforded. Plaintiff also relies on *Sloan* which is distinguishable because there the plaintiff-passenger was covered as a named insured under her own policy and as a passenger under the driver's policy because she occupied the vehicle insured under that policy. Thus, the court permitted the plaintiff to "stack" both coverages.

Here, plaintiff's decedent, by contrast, is not a member of either class and therefore is not entitled to coverage. *See Davidson v. Eastern Fire & Casualty Insurance Co.,* 245 S.C. 472, 478, 141 S.E.2d 135, 138 (1965). Allstate has not written its policy defining plaintiff's decedent as an "insured." Therefore, the trial court erred in allowing plaintiff to "stack" Allstate's uninsured motorist coverage. The trial court's judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

STOWERS and WALTERS, JJ., concur.